752 So.2d 1056 (1999)
Frank Joe STEED, Appellant,
v.
STATE of Mississippi, Appellee.
No. 98-KA-00450-COA.
Court of Appeals of Mississippi.
May 18, 1999.
Rehearing Denied August 10, 1999.
*1058 Steven E. Farese, Ashland, Hal Gerber, Memphis, TN, Attorneys for Appellant.
Office of the Attorney General by Edwin A. Snyder, Attorney for Appellee.
BEFORE KING, P.J., BRIDGES, AND LEE, JJ.
LEE, J., for the Court:
¶ 1. Frank Joe Steed was convicted for violating § 97-21-7 of the Mississippi Code Annotated (Rev.1994) which is entitled "Certificate of Acknowledgment or Proof of Deeds and Other Recordable Instruments." The basis of the charge brought by the State was that Steed had affixed his signature and acknowledgment to a warranty deed outside the presence of the purported signors of said deed, Frank and Rose Woolsey. From this conviction, *1059 Steed perfects his appeal to this Court and argues the following issues: (1) whether the trial court erred in denying the appellant's motion for recusal, (2) whether the trial court erred in denying the appellant's motion for change of venue, (3) whether the trial court erred in denying the appellant's motion for continuance, (4) whether the trial court erred in overruling the appellant's motion for judgment notwithstanding the verdict in regards to the State failing to prove that venue was proper, (5) whether the trial court erred in preventing counsel for the appellant from arguing that the State failed to prove venue, (6) whether the trial court erred in denying the appellant's motion for mistrial, (7) whether the trial court erred in granting instructions number ten, subsection three and number twelve, and (8) whether the sentence of fifteen years with seven years suspended and eight years to serve was excessive or unconstitutional. Finding his arguments without merit, we affirm.

FACTS
¶ 2. In October 1988, Frank E. and Rose A. Woolsey lived in Olive Branch, Mississippi. The Woolseys had read an advertisement in the Memphis newspaper for the sale of lots located in Sardis Country Estates. The Woolseys decided to purchase a lot and build a cabin for a weekend/summer retreat. In October 1988, the Woolseys purchased lot 19-A from Frank Joe Steed which was located in Sardis Country Estates. Subsequently, the Woolseys decided they desired to purchase the adjacent lot, lot 19-B, because it had a stream located on it and they thought it would be a nice place to plant a garden. In 1989, the Woolseys purchased lot 19-B from Frank Joe Steed which was located in Sardis Country Estates. In 1990, shortly after the purchase of the aforementioned lots, the Woolseys moved to Arkansas and, thereafter, their visits to their weekend retreat in Sardis Country Estates became much less frequent. The Woolseys did not discover a problem with what they believed to be their property until they returned for their grandson's wedding.
¶ 3. When the Woolseys went to view what they believed to be their lots they discovered a cabin located in the middle of the property. The Woolseys proceeded to go to the Batesville Chancery Courthouse to determine the origins of the apparent problem. Testimony in the case revealed that the land description on the deed relative to lot 19-A was actually for the adjacent lot, lot 19-B, and that their purchase of 19-B was not for the two and one-half acre adjacent lot, but was for a lot 19-B located in Sardis Country Estates approximately two miles away which consisted of one-half an acre. There was additional confusion surrounding the property lines of lots 19-A and 19-B. Due to the misunderstanding of the location of lot 19-B Steed proceeded to correct the problem with numerous surveys and corrected warranty deeds.
¶ 4. Steed's wife testified that Steed had mailed a warranty deed along with a letter which requested the Woolseys to sign the deed and return it to him to try and rectify the discrepancies in the property description; however, testimony further revealed that Steed was aware that the Woolseys had moved to Arkansas, but sent the deed to their old address in Olive Branch, Mississippi. Steed's wife further claimed the deed had been returned to them with what appeared to be the Woolseys's signature, but it had not been notarized.
¶ 5. Upon receipt they took the deed and cross-referenced what the Steeds believed to be the Woolseys's signatures with other documents containing their signatures in an attempt to determine if they were authentic. Mrs. Steed testified that they determined that the deed contained the signatures of the Woolseys, and Steed proceeded to notarize the warranty deed without the Woolseys affixing their signature in his presence. Mrs. Steed testified that her husband notarized the certificate of *1060 acknowledgment in Tate County; however, additional testimony revealed that the acknowledgment stated Panola County as the location of the notarization. Steed filed the new deed with the Batesville Chancery Clerk's Office located in Panola County in an attempt to correct the discrepancy. Additionally, there was proof that the land was located in the Second Judicial District of Panola County, and that the business operated by Steed was located in Panola County. At the trial, the Woolseys testified that not only had they not affixed their signatures to the subject deed but they resided in Arkansas on the date it was acknowledged and had never seen the deed which purportedly contained their signatures.
¶ 6. Steed was indicted by the Grand Jury of Panola County, Mississippi on March 25, 1996, under Miss.Code Ann. § 97-21-7, certificate of acknowledgment or proof of deeds and other recordable instruments. Steed's first trial was held in October 1997, and ended in a mistrial. The trial judge ordered that defendant's retrial be set for January 12, 1998, where he was found guilty of violating § 97-21-7.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN DENYING THE STEED'S MOTION FOR RECUSAL.
¶ 7. The first assignment of error is that the trial court erred when it denied Steed's motion for recusal. Steed argues that the trial judge should have recused himself from the trial due to the following circumstances: (1) the trial court originally heard this case on October 7, 1997, and Steed felt the court showed prejudice against him due to the way the Court addressed his counsel and wife, and (2) the court had heard a prior civil jury case which involved Steed, and Steed felt aggrieved by the orders pertaining to attorney's fees and orders concerning motions for a new trial. Additionally, for the first time on appeal, Steed claims the trial judge exhibited prejudice when the judge stated, "It's a shame when old people can't go and buy a piece of land and have piece of mind and not have to deal with a crook and a thief as the proof proved that you were in this case." Finally, Steed argues he was prejudiced by the trial judge's cumulative rulings with regard to his motion for continuance, motion for mistrial, and preventing his counsel from arguing that the State failed to prove venue; all of which prevented him from receiving a fair trial. This Court has reviewed the record as it pertains to Steed's arguments relative to any prejudice that might have resulted and find these arguments to be without merit.
¶ 8. Steed properly cites Canon three from the Mississippi Code of Judicial Conduct as authority for the applicable standard applied when determining whether recusal is warranted. Canon three (C)(1)(a) states as follows:
C. Disqualification.
(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.
Miss.Code Jud. Conduct 3, subd. C(1)(a).
¶ 9. This Court does not have the benefit of the record from the first trial and, therefore, is left only with the assertions that were made by Steed before the second trial when he presented his motion for recusal. Steed stated that during the October 7, 1997 trial which concluded in a mistrial, the judge exhibited behavior which indicated prejudice against him. Steed furnished several instances in which he claims the trial judge's prejudice was exhibited. One such instance provided by Steed was during his first trial in the case at bar when the trial judge addressed his wife. Steed explained that his wife had been asked to leave the stand and view a screen and it required that some testimony be given by the wife while away from the *1061 stand. Steed argues the judge demonstrated bias and prejudice when he stated in an abrupt voice "hey lady" and startled her and instructed his wife "if you don't speak up where the [c]ourt can hear you, what you have got to say is not going to be worth nothing."
¶ 10. In McFarland v. State, 707 So.2d 166, 179 (Miss.1997), the appellant argued that the trial judge was in error when he failed to recuse himself from presiding over his trial. Similar to the case at bar the appellant pointed to the judge's comments made during the trial as evidence that there was bias and prejudice. Id. The appellant specifically pointed to the judge's voir dire comments, his comment, "Don't make it a habit," made in response to defense counsel's request to approach the bench, and the comment made by the judge during the sentencing of the appellant which was as follows:
I didn't quite understand your remarks as to whether it pointed at the Court or whether it pointed at the jury; you made some remarks in the record in the matter about the future. I don't think you intended to stand up to this Court and threaten this Court; did you?
Id. at 180.
¶ 11. The Mississippi Supreme Court noted that when an appellate court reviews whether a judge should have disqualified himself from the trial an objective standard is applied. Id. A judge must disqualify himself from presiding over a trial if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality. Id. The Mississippi Supreme Court further stated that a "presumption exists that the judge, sworn to administer impartial justice, is qualified and unbiased, and where the judge is not disqualified under the constitutional or statutory provisions, `the propriety of his or her sitting is a question to be decided by the judge and is subject to review only in case of manifest abuse of discretion'." Id. (citations omitted). In McFarland, the court held that there was no bias or prejudice and, therefore, the trial judge was not in error when he did not recuse himself from the trial. As aforementioned, Steed argues that during his first trial on this matter he felt that the trial judge showed prejudice by the way he addressed his wife; however, there is nothing prejudicial in requiring a witness to speak at a volume so the evidence presented can be heard by the jury and the court and, therefore, be of value to the party presenting the evidence.
¶ 12. Next this Court reviews Steed's second argument for recusal relative to the trial judge having presided over a prior civil action in Panola County, styled Harold L. Lee, Jr. vs. Frank Joe Steed, Et Al., cause number CV94-211-BP2 in which Steed was a party. More specifically, Steed argues bias and prejudice was demonstrated when the court was awarding attorney's fees and stated, "The testimony of Ray Benson at trial and the evidence of the tax deeds showing other land Joe Steed had acquired at the tax sale support the conclusion that the action was part of a fraudulent and continuing scheme by the defendant Joe Steed to defraud the buyers of land in Sardis Country Estates." Steed argues since Sardis Country Estates is the same subdivision where the subject property was located in the case at bar he was prejudiced by the trial judge presiding in the subsequent case; however, though not conclusive on whether Steed was prejudiced it is worth noting that on crossexamination Steed admitted that he was aware of the judge's ruling in the aforementioned case prior to his first trial in the case at bar and at that time he did not file a motion for recusal on this basis.
¶ 13. Similar to this situation, in Adams v. State, 220 Miss. 812, 72 So.2d 211, 214 (1954), Adams filed a motion requesting the county judge to recuse himself in his subsequent criminal case since the judge had previously tried a civil action brought by the State Tax Collector against appellant for the recovery of penalties arising from the identical sale of intoxicating liquor *1062 involved in this criminal prosecution and had decided that suit against appellant. The appellant argued that due to the aforementioned factors the county judge had disqualified himself to preside on the trial of the civil case and was biased and prejudiced against appellant. The county judge denied the motion.
¶ 14. In Adams, 220 Miss. 812, 72 So.2d 211, 214 (1954), the Mississippi Supreme Court quoted the case of Garrett v. State, 187 Miss. 441, 455, 193 So. 452, 456 (1940), which states: "While an attorney may rightfully, in cases where he thinks the judge's relations would result to an injury of the defendant, move for a recusation of the judge; this Court, in such a case, will look to the whole trial and pass upon questions on appeal in the light of the completed trial. Every act and movement had during the entire trial will be considered, and if we are unable to find that rulings have been prejudicial to the defendant, we will not reverse." The court then stated "[i]f we should hold that a trial judge is disqualified merely because he has previously presided at the trial of a case involving the same evidence and transaction, then it would be necessary for him to stand aside and turn the duties of his office over to a special judge in every case in which there has been a mistrial, in every case where on appeal a new trial has been ordered, in every case where he himself has granted a new trial, and in every case growing out of the same transaction or based upon the same facts. The Legislature has not so enacted and we decline to adopt such a rule." Id. at 214. With these guidelines in mind this Court finds that there was no evidence of bias or prejudice in the record because the trial judge presided over a prior civil case.
¶ 15. Finally, Steed argues that the cumulative rulings of the court relative to his motion for continuance, motion for mistrial and preventing his counsel from arguing that the State failed to prove venue, and that bias and prejudice was exhibited by the trial judge in his remarks during sentencing at the second trial in the case at bar. After a careful review of the record and applicable case law this Court holds that the cumulative rulings of the court relative to Steed's motion for continuance, motion for mistrial and preventing his counsel from arguing venue are supported by law and are without merit. The substantive basis for this conclusion of the Court can be found in the proceeding discussion of subsequent issues presented by Steed.
¶ 16. Similar to Steed's argument relative to comments made by the judge during sentencing the court in Green v. State, 631 So.2d 167 (Miss.1994), addressed this particular issue. In Green, the appellant objected to the following statements made by the judge during the rendering of his sentencing:
It was a senseless killing, a useless killing. JustI see dozens of them a year that are committed by people who will poke a handgun in their pocket and walk out on the street knowing they're going to kill somebody or they wouldn't put it in there. You didn't have that gun on for protection and you didn't have that gun on headed for a pawn shop. The man that you said was going to pawn that gun testified from the witness chair that you had not made any appointment with him that day or any other time to pawn that weapon. It was a senseless, useless, reckless killing.
Id. at 178. The court noted the aforementioned comment specifically regarding Green and his actions during the rendering of the judge's sentencing did not express any pre-judgment of Green's case. Instead, these comments reflect the judge's conclusions drawn from the evidence presented in the case and, they do not show proof relative to the reasonable doubt about the validity of the presumption of impartiality. Id. Similar to Green, Steed has argued that the comments made by the trial judge pertaining to him being involved in fraud and being a "a crook and a thief" during his sentencing require that *1063 this Court determine that this was evidence of bias and prejudice and that he received an unfair trial; however, this Court is inclined to follow the reasoning espoused in Green. A reasonable person, knowing all of the circumstances, would not doubt the judge's impartiality in this case. The statement made by the trial judge during sentencing was not a prejudgment of the cases but, was merely the conclusions drawn from the evidence presented in the case. It must further be noted that no prejudice can be found in the actual sentence imposed in this matter since it was within the statutory sentencing guidelines and was within statutory guidelines imposed by Miss.Code Ann. § 97-21-33 (Rev.1994). So long as the sentence imposed is within the statutory limits, sentencing is generally a matter of trial court discretion. Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992).
¶ 17. Steed has cited no instances where the judge improperly admitted or excluded evidence as a result of his alleged bias, nor has he provided any other evidence of bias. After this Court has examined the case as a whole, we are of the opinion that the circuit judge's decision is amply supported by competent and credible evidence; therefore, we find no reversible error by the trial court.

II. WHETHER THE TRIAL COURT ERRED IN DENYING THE STEED'S MOTION FOR CHANGE OF VENUE.
¶ 18. The second assignment of error is that the trial court erred when it did not grant Steed's motion for change of venue. Steed argues that through the testimony of his wife he presented evidence that he acknowledged the deed in his home located in Tate County, Mississippi and that venue lies in Tate County as opposed to Panola County, Mississippi where the deed was filed and the case at bar was tried. Steed cites Miss.Code Ann. § 99-11-3 (Rev.1994) which pertains to venue and reads as follows:
(1) The local jurisdiction of all offenses, unless otherwise provided by law, shall be in the county where committed. But, if on the trial the evidence makes it doubtful in which of several counties, including that in which the indictment or affidavit alleges the offense was committed, such doubt shall not avail to procure the acquittal of the defendant.
Additionally, Steed cites Miss.Code Ann. § 99-11-19 (Rev.1994) relative to venue which states as follows:
When an offense is committed partly in one county and partly in another, or where the acts, effects, means, or agency occur in whole or in part in different counties, the jurisdiction shall be in either county in which said offense was commenced, prosecuted, or consummated, where prosecution shall be first begun.
Steed contends that due to the nature of the offense and the reading of the statutes venue only lies in the county where the crime is committed.
¶ 19. Steed does not prevail on his argument relative to change of venue. In Hill v. State, 112 Miss. 375, 73 So. 66, 67 (1916), the Mississippi Supreme Court held that even if the evidence presented at trial left the venue in doubt, this court would be precluded from reversing the case. In Presley v. State, 217 Miss. 112, 63 So.2d 551, 555 (1953), the Mississippi Supreme Court examined Sec. 2419, Code of 1942, which provides that "if on the trial the evidence makes it doubtful in which of several counties, or judicial districts, or justice of the peace districts, ... including that in which the indictment, or affidavit, alleges it, the offense was committed, such doubt shall not avail to procure the acquittal of the defendant." The court held that such language in a statute eliminates the requirement that proof of venue be proven beyond a reasonable doubt in cases where there is a conflict in the evidence as to which of two or more counties or districts in Mississippi is the place of the offense, but it has no application where the question is whether or not the alleged criminal *1064 act was committed in Mississippi. Id. Miss.Code Ann. § 99-11-3(1) (Supp.1998), contains similar language and, therefore, the reasonable doubt standard is lessened. "[W]e can only disturb the trial judge's denial of a change of venue if we find that this ruling on the record has been a clear abuse of discretion." Winters v. State, 473 So.2d 452, 457 ( Miss.1985). Additionally, venue may also be determined under § 99-11-19 (Rev.1994) since the record clearly indicates that the act of acknowledging the deed had an effect on Panola County. The testimony and evidence presented by the State proved that there was a proper factual question relative to venue which could be presented to the jury.
¶ 20. At the second trial Steed's wife testified that she witnessed Steed notarize the deed at their home which is located in Tate County. It is this evidence which Steed now relies on as a basis to object to the trial judge's determination that venue was proper in Panola County. That venue was proper in Panola County was proven by the following facts during the trial relative to this issue: most importantly, is the fact that at the top of the certificate of acknowledgment on the subject deed it indicated Panola County and testimony stated that this was indicative of the county where the actual notarization occurs, the indictment was for the Second Judicial District of Panola County, the subject property was located in Panola County, the deed was filed in Panola County, and Steed's business was located in Panola County. Steed further contends that he was unfairly prejudiced by being tried in Panola County where the public sentiment was so biased that he could not receive a fair trial; however, the record contains evidence that this assertion is totally without foundation.
¶ 21. Prior to the judge making a ruling relative to the proper venue for the trial, the court conducted voir dire of the jury to determine whether on the basis of prejudice of jurors such transfer was warranted. In reviewing this assignment of error we are aided by the Mississippi Supreme Court's opinion in Weeks v. State. In Weeks the court held that:
The accused has a right to a change of venue when it is doubtful that an impartial jury can be obtained; upon proper application [motion supported by the affidavits of two witnesses with knowledge], there arises a presumption that such sentiment exists; and, the [S]tate then bears the burden of rebutting that presumption.
Weeks v. State, 493 So.2d 1280, 1286 (Miss. 1986) (quoting Johnson v. State, 476 So.2d 1195, 1210-11 (Miss.1985)). The court stated that this presumption can normally be rebutted during voir dire, although "there may be some circumstances when the pretrial publicity is so damaging, the presumption [of prejudice] so great, that no voir dire can rebut it." Weeks, 493 So.2d at 1286. The court then reaffirmed the time-honored rule that the decision to grant a motion for change of venue rests largely within the sound discretion of the trial judge, but cautioned that this discretion may be abused. Id.; see also Harris v. State, 537 So.2d 1325, 1328 (Miss.1989) (holding that "[o]n the issue of venue change, this [c]ourt will not disturb the ruling of the lower court where the sound discretion of the trial judge in denying change of venue was not abused"). In determining if a judge has abused his discretion in denying a change of venue, "we look to the completed trial, particularly including the voir dire examination of the prospective jurors, to determine whether the accused received a fair trial." Winters v. State, 473 So.2d 452, 457 (Miss.1985); see also Fisher v. State, 481 So.2d 203, 220 (Miss.1985) (holding that motion for change of venue should be granted where "under the totality of the circumstances it appears reasonably likely that, in the absence of such relief, the accused's right to a fair trial may be lost"). This Court has thoroughly reviewed the record as it pertains to the voir dire examination and determined that no such bias existed which *1065 would deny Steed a fair trial. The record reveals that the jury venire consisted of approximately seventy potential jurymen. After extensive questioning by the court, the State, and the defense, there were only four jurors who had stated that due to either a prior relationship or knowledge of Steed they could not be impartial. These four jurors were automatically excused for cause by the trial judge without objection from the State. This Court holds that the State showed impartiality, and, therefore, we affirm the trial court's denial of the change of venue request.

III. WHETHER THE TRIAL COURT ERRED IN DENYING STEED'S MOTION FOR CONTINUANCE.
¶ 22. The third assignment of error is that the trial court erred when it did not grant Steed's motion for continuance. The trial judge's decision to grant or deny a motion for a continuance is within the sound discretion of the court and will not be reversed unless it is shown that manifest injustice has resulted. Coleman v. State, 697 So.2d 777, 780 (Miss. 1997). Further, a defendant must show both that there was an abuse of discretion and that this abuse actually worked an injustice in his case. Morris v. State, 595 So.2d 840, 844 (Miss.1991) (citations omitted). Mississippi statutory law states that "[a] denial of the continuance shall not be grounds for reversal unless the supreme court shall be satisfied that injustice resulted therefrom." Miss.Code Ann. § 99-15-29 (Rev.1994).
¶ 23. In the case at bar, the appellant testified that a continuance was necessary because his house had recently burned and he had recently suffered the death of his mother. Steed argued that it was due to the aforementioned factors the he was unable to assist counsel in the preparation of his case for trial. Steed further explained that he needed additional time to prepare "a lot of the missing documentation that we didn't feel that we would need last time or I didn't feel that we would need, I can get them together. I can prepare the maps and do a better outline for the defense than what the prosecution put on." With it kept in mind that the authority to reverse is restricted unless there is a manifest injustice which resulted, this Court examines the arguments asserted by Steed.
¶ 24. On October 7, 1997, Steed was tried before a jury in the aforementioned case which resulted in a mistrial. Miss.Code Ann. § 99-15-29 states as follows:
On all applications for a continuance the party shall set forth in his affidavit the facts which he expects to prove by his absent witness or documents that the court may judge of the materiality of such facts, the name and residence of the absent witness, that he has used due diligence to procure the absent documents, or presence of the absent witness, as the case may be, stating what such diligence consists, and the continuance is not sought for delay only, but that justice may be done. The court may grant or deny a continuance, in its discretion, and may of its own motion cross-examine the party making the affidavit. The attorneys for the other side may also cross-examine and may introduce evidence by affidavit or otherwise for the purpose of showing to the court that a continuance should be denied. No application for a continuance shall be considered in the absence of the party making the affidavit, unless his absence be accounted for to the satisfaction of the court. A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom.
On March 25, 1996, Steed was indicted for willfully, unlawfully, feloniously and falsely certifying a warranty deed with his signature and notary seal. Steed received his first trial in the case at bar on October 1997, which resulted in a mistrial. Steed's case was rescheduled and commenced on January 12, 1998. Steed was found guilty *1066 of the charge on January 15, 1998. There was approximately nineteen months between March 25, 1996 and October 1997. Steed should have been adequately prepared to defend himself at the first trial that commenced in October 1997. At the second trial Steed presented his argument for continuance; however, the motion for continuance on which this argument is based has not been incorporated into the record and, therefore, is not capable of review by this Court. This Court cannot consider anything which is not encompassed in the record before it. "The result of appellant's failure to present a full record is that the presumption of correctness stands unrebutted." Smith v. State, 572 So.2d 847, 849 (Miss.1990). Even when this Court reviews Steed's testimony he failed to set forth the facts which he expected to prove by the documents so that the Court could judge the materiality of such facts, or that he has used due diligence to procure the absent documents. Additionally, Steed failed to assert the prejudice which would result if the motion were not granted. This Court holds that the trial judge's ruling did not constitute an abuse of discretion and was not in error.
IV. WHETHER THE TRIAL COURT ERRED IN OVERRULING STEED'S MOTION FOR J.N.O.V. IN REGARDS TO THE STATE FAILING TO PROVE THAT VENUE WAS PROPER.
V. WHETHER THE TRIAL COURT ERRED IN PREVENTING COUNSEL FOR STEED FROM ARGUING THAT THE STATE FAILED TO PROVE VENUE.
VII. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTIONS NUMBER TEN AND NUMBER TWELVE.
¶ 25. Steed contends that the trial court erred when it did not grant appellant's motion for a judgment notwithstanding the verdict. "Requests for a directed verdict and motions JNOV implicate sufficiency of the evidence." Franklin v. State, 676 So.2d 287, 288 (Miss.1996). Steed argues that there was insufficient evidence presented by the State relative to venue to support a conviction in Panola County.
¶ 26. When the trial court judges the legal sufficiency, as opposed to the weight of the evidence on a motion for a directed verdict or judgments notwithstanding the verdict, the trial court is required to consider evidence introduced in the light most favorable to the State and accept as true all of the evidence introduced at trial by the State, including all reasonable inferences that may be drawn therefrom. Yates v. State, 685 So.2d 715, 718 (Miss.1996). Any evidence that is favorable to the defendant must be disregarded during the consideration of the trial court in determining whether to grant a motion. Id. at 718.
¶ 27. When the court is making a determination on whether to grant a judgment notwithstanding the verdict, the court is "not at liberty to direct that the defendant be discharged short of a conclusion... that given the evidence, taken in the light most favorable to the verdict, no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." Hicks v. State, 580 So.2d 1302, 1304-05 (Miss.1991) (quoting Pearson v. State, 428 So.2d 1361, 1364 (Miss.1983)).
¶ 28. Steed quotes State v. Fabian, 263 So.2d 773, 775 (Miss.1972), which states "under Mississippi criminal procedure, questions of fact as to venue are for the determination of the jury and are not to be decided by the trial court." The jury received testimony relative to venue by both the State and Steed and since the jury is the sole judge of weight and worth of testimony it has the duty to determine what testimony it will accept as true or reject as false. Whittington v. State, 377 So.2d 927, 929 (Miss.1979). This question of fact was clearly presented for the jury's determination. At the end of closing arguments *1067 the trial judge preceded to dispense the jury instructions. Two of the jury instructions, number ten subsection three and number twelve informed the jury about venue and that venue must be found proper by the jury before reaching a guilty verdict. Jury instructions 10(3) and 12 read as follows:
Instruction 10(3): The indictment in this case that the defendant, Frank Joe Steed, committed the crime of forgery by wilfully and falsely certifying that a deed was acknowledged by Frank and Rose Woolsey. If you believe from all of the evidence in this case beyond a reasonable doubt that: (3) the acts described above occurred or had an effect in the Second Judicial District of Panola County, Mississippi, then you shall find the defendant guilty as charged. If the state has failed to prove beyond a reasonable doubt any of the above elements then you shall find the defendant not guilty.
Instruction 12: When an offense is committed partly in one county and partly in another, or where the acts, effects means, or agency occur in whole or in part in different counties, the prosecution of such offense may be held in the circuit court of either county in which said offense was commenced, continued, or consummated. When the laws of this state allow an offense to be prosecuted in two or more counties, the county in which the prosecution is first commenced has sole and exclusive jurisdiction of such offense, and the other county or counties have no jurisdiction of the offense.
The rational inference can be made that because the jury found Steed guilty they also found that the State had presented sufficient evidence that established the necessary element of venue in Panola County. Additionally, this Court relies on our reasons enumerated in this opinion in our discussion relative to venue in issue two and hold that the trial judge properly denied the judgment notwithstanding the verdict on the basis of venue. The evidence conflicted relative to where the notarization might have actually taken place and in light of the guilty verdict the jury determined that Panola County had proper venue. This Court can not say that the jury's decision was in error and, therefore, this argument is without merit.
¶ 29. Additionally, Steed argues that he was denied his right to argue the State failed to prove venue; however, this contention fails because the record reveals that Steed's itemized contentions for this deprivation were taken out of context and are without merit. As previously discussed, both parties presented evidence relative to venue and once evidence had been presented by both parties it is a question for the jury to decide and needed no further argument. Even during Steed's counsel's presentation in closing argument, it was stated: "And the court has ruled on the venue question. You've heard the Court's ruling on where it happened, really doesn't matter, it's where it affects property. That's ruled on."
¶ 30. Finally, Steed argues that the trial court erred when it granted jury instructions number ten, subsection three and number twelve. Steed argues that it was error to grant jury instruction number ten because of subparagraph three which stated that, "the acts described above occurred or had an effect in the Second Judicial District of Panola County." Steed further argues that instruction number twelve was improper as to laying venue and was replete with prejudice against Steed.
¶ 31. In order for this Court to reverse a case on the basis of a jury instruction Steed must overcome the correctness of the trial court's judgment through a demonstration of reversible error. Nicolaou v. State, 612 So.2d 1080, 1084 (Miss.1992). Steed has failed to do so. Jury instructions ten and twelve do not inform the jury that it can do whatever it wanted to regardless of the law and the *1068 granting of these instructions was not error. As previously mentioned in issue two in this opinion a jury question was created relative to venue, and the instructions were proper. Jury instruction number twelve is based on Miss.Code Ann. § 99-11-19 (Rev.1994) which states "when an offense is committed partly in one county and partly in another, or where the acts, effects, means or agency occur in whole or in part in either county in which said offense was commenced, prosecuted, or consummated, where prosecution shall be first begun." A literal reading of this statute allows the prosecution to prosecute in either county since testimony revealed that the acknowledgment affected property in Panola County; however, jury instruction number ten gives the jury the latitude and proper guidance to make the decision as to venue prior to having convicted Steed.

VI. WHETHER THE TRIAL COURT ERRED IN DENYING STEED'S MOTION FOR MISTRIAL.
¶ 32. The sixth assignment of error is that the trial court erred when it did not grant Steed's motion for a mistrial. Steed argues that during the direct examination of a witness for the State, the following question was asked, "[I]s an acceptable method of correcting a problem for somebody to sign somebody else's name to a deed without authority?" A conference was held outside the presence of the jury where counsel for Steed moved for a mistrial. Steed contends that a mistrial was warranted because the State had inferred that the appellant forged the name of the Woolseys to the deed in question, and since this was not supported by the evidence and Steed was not charged with forging the Woolseys' names the charges should be dismissed.
¶ 33. The State argued that the question related to previous testimony given by the witness relative to two methods of correcting a mistake in a description in a deed. The State further argued that the witness was asked if somebody signed somebody else's name without their permission was an acceptable method. The State did not specifically address the question to the defendant. Additionally, the State argued that there was prior testimony given directly by the Woolseys that they had not signed the deed. The testimony of the Woolseys relative to their signature was not the subject of objection. Mississippi Rule of Evidence 103(a) requires "a timely objection ... stating the specific ground of objection," if error is to "be predicated upon a ruling which admits ... evidence...." Edwards v. State, 723 So.2d 1221, 1230-31 (Miss.App. 1998). The trial judge sustained the objection to the question and denied the motion for a mistrial.
¶ 34. When the trial judge sustained the objection and denied the motion he based his ruling on the fact that the issue of whether the Woolseys had signed the deed was clearly before the jury. The Woolseys had formerly testified that they did not sign the deed and in fact were not in the State of Mississippi at the time the deed was signed. In addition to the trial judge's ruling, this Court believes that the aforementioned testimony was necessary to present a coherent story to the jury. "The other crime must be `integrally related to time, place, and fact' to the crime for which the accused is standing trial." Edwards v. State, 723 So.2d 1221, 1230 (Miss. App. 1998). Admission of the subject evidence must be necessary to tell a complete and coherent story and prevent confusing the jury. Id. The Mississippi Supreme Court has held "that the State has a `legitimate interest in telling a rational and coherent story of what happened....'" Id. (citations omitted). Moreover, the potential signing name(s) of the owner of property in a deed to correct a discrepancy was "integrally related to time, place, and fact" and aided the jury with the possible motive of Steed to acknowledge the deed without the Woolseys in his presence. Furthermore, due to the fact that the Woolseys did not sign the deed and that the testimony is admissible since it is part of the State presenting a coherent story, Steed suffered *1069 no prejudice by the admission of this testimony. "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused. Unless the trial judge's discretion is so abused as to be prejudicial to the accused, this Court will not reverse his ruling." Parker v. State, 606 So.2d 1132, 1136 (Miss.1992). There was no prejudice, and we, therefore, determine this assignment of error to be without merit.

VIII. WHETHER THE SENTENCE OF FIFTEEN YEARS WITH SEVEN YEARS SUSPENDED AND EIGHT YEARS TO SERVE WAS EXCESSIVE OR UNCONSTITUTIONAL.
¶ 35. The eighth assignment of error is that the sentence imposed by the trial court is excessive or unconstitutional. Steed was prosecuted and convicted for violating Miss.Code Ann. § 97-21-7 (Rev. 1994). The sentencing guidelines for violation of this statute are found in Miss.Code Ann. § 97-21-33 (Rev.1994), which reads as follows:
Persons convicted of forgery shall be punished by imprisonment in the penitentiary for a term of not less than two (2) years nor more than fifteen (15) years, provided, however, that when the amount of value involved is less than one hundred dollars ($100.00) in lieu of the punishment above provided for, the person convicted may be punished by imprisonment in the county jail for a term of not more than twelve (12) months, within the discretion of the court.
Since we are dealing with property which is value in a sum greater than one hundred dollars the latter sentencing guideline does not apply.
¶ 36. The trial court sentenced Steed to serve a term of fifteen years in the Mississippi Department of Corrections with seven years suspended, but served upon unsupervised probation with eight years to serve. Additionally, Steed was to pay a fine in the sum of $2,500 and all court costs, as well as paying special financial assessment for an analytical fee in the amount of $300 to the Mississippi Crime Lab. In Steed's brief he cites Sherman v. State, 359 So.2d 1366, 1368 (Miss.1978), and quote "The part of the cause that gives this Court greater concern is the sentence of one year in the county jail." Steed takes this one sentence out of context and fails to follow the majority to the conclusion of the opinion related to the sentence imposed in Sherman. The Mississippi Supreme Court went on to acknowledge that the sentencing guidelines mandated in Miss.Code Ann. § 97-21-33 (Rev.1994), applied whether or not there was an intent to defraud or a criminal intent. Id. at 1368. The court further noted that the sentence imposed was within the limitations of the statute and that the statute permitted discretion in imposing the initial sentence to the trial court, but not to this Court on appeal. Id. The court determined that there was no error in the lower court's sentencing and affirmed the trial court. Id. Steed then continues his argument and cites the dissent in Sherman v. State, 359 So.2d 1366 (Miss.1978), to support his argument that the sentence imposed is excessive; however, the dissent does not have the effect of law.
¶ 37. This Court is inclined to follow the precedent established in Sherman. "[T]his Court has stated in the past that defining crimes and prescribing punishments are exclusively legislative functions as a matter of constitutional law." Weaver v. State, 713 So.2d 860, 863 (Miss.1997) (citation omitted). "The legislature is completely vested with the authority to say what constitutes a crime, and what punishment shall be inflicted for these matters are purely legislative questions...." Id. (quoting Gabriel v. Brame, Sheriff, 200 Miss. 767, 28 So.2d 581, 582 (1947)). We, therefore, hold that this assignment of error is without merit.
¶ 38. THE JUDGMENT OF THE CIRCUIT COURT OF PANOLA COUNTY OF CONVICTION OF FORGERY AND *1070 SENTENCED OF FIFTEEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH SEVEN YEARS SUSPENDED AND A FINE OF $2,500 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, DIAZ, IRVING, PAYNE, AND THOMAS, JJ., CONCUR.